## OSBORNE SWAN *vs.* JAMES W. COLVILLE.

The rights which a lot owner on a plat has in the platted streets prior to their
    acceptance as public highways are limited to the use of them as they existed
    when he acquired his lot, or the use of them in such condition as he can put
    them without interfering with the rights of the other owners on the plat.
A. and B. owned lots on the same plat fronting on a private street marked out
    on the plat as running from a public highway to the Providence river.   A.'s
    lot was on the edge of a bluff, B.'s lot was on the flats along the shore of the

river, and between them the street descended so abruptly as to be impassable. Before B. acquired his lot, A. and other lot owners on the bluff graded the street from the highway to the edge of the bluff, and in order to prevent the soil of the street in front of their lots from being washed away, built and for more than twenty years have maintained a bulkhead with a concrete gutter and spouts to discharge the water flowing on the street. The lot owners on the bluff having refused to join with B. in grading down the declivity so as to make a way for him from his lot through the platted street to the highway,

*Held,* that B. had no right to tear up the concrete gutter, destroy the bulkhead and dig up the soil in the street in front of A.'s lot, thereby impairing or destroying A.'s access to his lot.

BILL IN EQUITY for an injunction.

*July* 24, 1895. MATTESON, C. J. This is a bill for an injunction. The complainant and respondent are owners of estates situated on the same plat and fronting on a private way or street laid out on the plat as Burgess street, but now called Sherburne street. The street as platted extends easterly from Eddy street in Providence, a public highway, to the Providence river. From Eddy street to the easterly line of the complainant's land, it has been graded by the abutting owners, but at that point it descends abruptly about thirty feet so that it is impassable by vehicles or even on foot except by climbing. From the base of this declivity it extends as platted over the flats along the shore to the river. The respondent's lot, of which he became the owner May 19, 1886, is a part of the flats and fronts on that part of the street extending from the base of the declivity to the river. The soil of the street at the point of its abrupt descent is sandy and liable to be gullied and washed away by rains. To prevent this and to maintain the street as a means of access to their estates, the complainant and his immediate neighbors have been compelled repeatedly to fill in the edge of the bank, and about twenty-two years ago they built, and have since kept in position a wooden bulkhead level with the street and with a concrete gutter and wooden spouts to discharge the water flowing on the street.

The respondent applied to the owners of the estates on the top of the bank, including the complainant, to join with him in grading down the declivity, so as to make a way for him through Sherburne street to Eddy street. This they declined

to do.  Thereupon, the respondent went on Sherburne street in front of the complainant's estate, tore up the concrete in the. gutter, destroyed a portion of the bulkhead and dug down the face of the bank for a space from six to eight feet wide, so that the water flowing on Sherburne street will be likely to cut away the bank and to impair .or destroy the complainant's access to his estate.  The bill alleges that the respondent threatens to proceed to dig down the bank still farther to the westward, and beyond the complainant's property, which will result in irreparable damage and injury to him by destroying his means of access to his land, and prays for an injunction.

The cause was heard by the court on the prayer for a preliminary injunction under an agreement of the parties that the decision should have the same effect as a decision on the prayer for a permanent injunction.

Conceding the respondent's right to the use of the streets shown on the plat, that right, prior to the acceptance of such streets as public highways, is limited to the use of them as they existed on the ground when he acquired the ownership of his estate, or to the use of them in such condition as he may be able to put them without interference with the rights of other owners on the plat.  *Parker* v. *Smith*, 17 Mass. 413 ; *Loring* v. *Otis*, 7 Gray, 563 ; *Howe* v. *Alger*, 4 Allen, 206 ; *Hennessey* v. *Old Colony & Newport R. R. Co.*, 101 Mass. 540 ; *Cunningham* v. *Fitzgerald*, 138 N. Y. 165.  In the last case cited, page 171, it is said :  "A private individual engaged in improving streets for the benefit or convenience of his own property, cannot cut down the grade of an existing street to the detriment of an abutting owner. If the cutting of the grade impairs an abutting owner's right of access to his property, his consent is necessary under such circumstances, as he may resist a projected improvement by his neighbor which he could not resist if undertaken by the public authorities. . . . . . As against any mere private interest, a property owner can resist an attempt to change the grade of a street whenever he can show that such change will injure him."

We are of the opinion that the respondent had no right to tear up the concrete in the gutter, destroy a portion of the bulkhead and dig up the soil in Sherburne street in front of the complainant's estate, since the necessary result of such acts will be to impair or destroy the complainant's access to his land.    An injunction, therefore, will be granted.

*John F. Lonsdale & Lorin M. Cook,* for complainant.

*James W. Colville, pro se ipso.*